## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**HENRY HARPER**                                                    **PLAINTIFF**

**v.**                                    **CIVIL NO. 3:20-cv-00575-KHJ-RHWR**

**KILOLO KIJAKAZI,[1]**                                            **DEFENDANT**
***Acting Commissioner of Social***
***Security Administration***

## REPORT AND RECOMMENDATION

Plaintiff Henry Harper seeks judicial review of the decision of the Commissioner of the Social Security Administration, denying his applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Plaintiff filed a Memorandum [10], Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, filed a Brief [12] in response, and Plaintiff a Reply [13]. Having considered these submissions, the administrative record, and relevant law, the undersigned recommends that the decision of the administrative law judge ("ALJ") be affirmed because it is supported by substantial evidence and comports with relevant legal standards.

## I.  BACKGROUND

On July 19, 2018, Plaintiff applied for DIB and SSI, alleging an onset date of March 1, 2011, when he was forty-two years of age. [8] at 259. Plaintiff alleged in his

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is automatically substituted, in place of Andrew Saul, as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

application that he was disabled because of type I diabetes, an amputated right big toe, neuropathy, a left forearm fracture, episodes of confusion, hypoglycemia, depression, anxiety, impaired/diminished cognitive abilities, and pancreatic problems. *Id.* at 282. Plaintiff completed two years of college. *Id.* at 37. His work history includes employment as a server and bartender. *Id.* at 22, 62.

After Plaintiff's claims were denied, he requested a hearing before an ALJ, and a hearing was held on November 21, 2019. *Id.* at 29-67. Plaintiff and a vocational expert testified. The ALJ issued a decision unfavorable to Plaintiff on January 27, 2020. *Id.* at 15-22. When the Appeals Council denied Plaintiff's request for review, Plaintiff filed this action under 42 U.S.C. § 405(g), which grants the Court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

In making the determination that Plaintiff was not entitled to benefits, the ALJ utilized the five-step evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. The ALJ determined, sequentially, whether Plaintiff (1) was engaged in substantial gainful activity; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) could perform the requirements of past work; and, if not, (5) based on Plaintiff's age, work experience, and residual functional capacity ("RFC"), could adjust to other work that existed in significant numbers in the national economy.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 1, 2011. [8] at 18. At step two, the ALJ concluded that Plaintiff suffered from the severe impairment, "diabetes with diabetic neuropathy (20 CFR 404.1520(c) and 416.920(c)." *Id.* The ALJ found that the Plaintiff's other physical impairments, "residuals from a right shoulder fracture and amputation of his right great toe," and mental impairments of anxiety and depression, were not severe impairments. *Id.* at 19. At step three, the ALJ determined that Plaintiff did not meet the standard of a listed impairment. *Id.* at 20.

Before reaching step four, the ALJ concluded that Plaintiff had the RFC

> to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) with exceptions. The claimant can lift or carry 50 pounds occasionally and 25 pounds frequently. He can sit 6 hours and stand or walk 6 hours in an 8-hour day. He cannot climb ladders, ropes, or scaffolds, work at unprotected heights, work with or near hazardous machinery, or perform commercial driving, but he can occasionally climb ramps and stairs, and balance.

*Id.*

At step four, with the use of vocational expert testimony, the ALJ found Plaintiff capable of performing past relevant work as a combination server/bartender and not disabled from the alleged onset date of March 1, 2011, through the date of the decision, January 27, 2020. *Id.* at 22.

On appeal, Plaintiff challenges the ALJ's finding that he "can lift or carry 50 pounds occasionally and 25 pounds frequently" and the ALJ's finding that the opinion of Plaintiff's treating physician, O.B. McNair, M.D., was unpersuasive.

3

## II. ANALYSIS

### A. Standard of Review

The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotations and brackets omitted).

In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). The ALJ has the sole responsibility for determining a claimant's disability status at the hearing level. *See Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). "In doing so, the ALJ is entitled to determine the credibility of medical experts as well as lay

witnesses and to weigh their opinions and testimony accordingly." *Id.* (internal citation omitted).

The ALJ must articulate how persuasive he or she finds "all of the medical opinions and all of the prior administrative medical findings" in a claimant's case record. 20 C.F.R. §§ 404.1520c(b) and 416.920c(b). The five factors for determining the persuasiveness of a medical opinion are: supportability, consistency, relationship with the claimant, specialization, and other factors. *Id.* §§ 404.1520c(b), (c), 416.920c(b), (c). Supportability and consistency are the most important factors, and the ALJ must articulate how he considered these factors in evaluating each medical opinion and prior administrative finding. 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2).

As for supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are," the "more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). As for consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ generally is not required to articulate how he or she considered other factors beyond supportability and consistency. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

B. <u>Substantial Evidence Supports the Finding that Plaintiff Can Lift or Carry 50</u>
<u>Pounds Occasionally and 25 Pounds Frequently</u>

Plaintiff challenges the ALJ's finding that he "can lift or carry 50 pounds occasionally and 25 pounds frequently." Plaintiff asserts that the ALJ was required to incorporate in the RFC all functional limitations described by internal medicine consultative examiner, Allison Williams, M.D., because the ALJ found Dr. Williams's opinion persuasive. [8] at 18; [10] at 11-12. Plaintiff specifically maintains that the ALJ was required to include Dr. Williams's finding that Plaintiff could lift no more than five pounds with his right upper extremity. [13] at 1.

Dr. Williams's report shows that she tested Plaintiff's muscles and found they were of normal strength, though Plaintiff had a reduced range of motion in his right shoulder. *Id.* at 437. Dr. Williams wrote under the section of her report titled "Impressions" that Plaintiff had

> [r]ight upper extremity pain – Claimant's history and exam are consistent with right upper extremity injury. Physical exam was fairly unremarkable, except for mild tenderness to palpation of area near right collar bone. The claimant also had decreased ROM in the right upper extremity. Based on this diagnosis alone, it would be expected that the claimant's functional status may be somewhat limited as it pertains to lifting and carrying more than 5 pounds in his right arm.

*Id.* at 438.

Dr. Williams did not include a lifting and carrying restriction in the final paragraph of her report, which provides:

> Based on the available medical history and objective clinical findings, this claimant has limitations. They are as follows: The claimant has limitation in standing and is able to stand frequently in an 8 hour work day. The claimant ambulates without difficulty and without assistive device.

[8] at 439.

Plaintiff maintains that Dr. Williams made a definitive finding that Plaintiff could not lift or carry more than 5 pounds. This argument is belied by the final paragraph of Dr. Williams's report which does not contain a lifting and carrying restriction, and by the open-ended, non-objective wording Dr. Williams used, stating that "it would be expected that the claimant's functional status may be somewhat limited as it pertains to lifting and carrying more than 5 pounds in his right arm." *Id.* at 438. The ALJ relied on the previous page of Dr. Williams's report, which contained objective clinical findings, namely strength tests showing Plaintiff had normal muscle strength. *Id.* at 437. The ALJ articulated this analysis by explaining that "the CE found the claimant walked normally with no assistive device and had normal strength in all extremities, though he had a reduced range of motion in his right shoulder." *Id.* at 21, 438-39.

The ALJ cited other evidence supporting the RFC limitation for carrying and lifting. The ALJ found "persuasive as to exertional level" the opinions of agency physician reviewers Glenn James, M.D., and Cherilyn Hebert M.D. *Id.* at 21. Both found that Plaintiff could lift or carry 50 pounds occasionally and 25 pounds frequently. *Id.* at 124, 166. The ALJ also summarized Plaintiff's testimony, which did not include an allegation that Plaintiff was unable to lift or carry. *Id.* at 21. The ALJ asked Plaintiff twice at the hearing to list the conditions that interfered with his ability to work. *Id.* at 41-48, 56. Plaintiff testified that he could not work because of diabetes, pancreas and stomach pain, leg pain, nerve pain throughout the body, foot

pain, groin pain, an amputated toe, and anxiety. *Id.* Plaintiff did not mention right upper extremity pain or otherwise testify that he was limited in lifting and carrying. *Id.*

C. Dr. McNair's Opinion was Properly Evaluated

The ALJ determined that the opinion of Plaintiff's treating physician, Obie McNair, M.D., was unpersuasive. Plaintiff asserts that the ALJ failed to provide any citations or analysis to support this finding. Plaintiff believes the RFC should have included Dr. McNair's conclusion that Plaintiff cannot stand for more than 20 minutes or lift more than 10 pounds. [8] at 406, [10] at 14. According to Plaintiff,

> the ALJ failed to offer more than a conclusory justification for finding Dr. McNair's opinion to be unpersuasive. The ALJ wrote that Dr. McNair's opinion was "inconsistent with treatment records," but the ALJ did not identify any specific records that were inconsistent with Dr. McNair's opinion. The ALJ also failed to consider the strength of Dr. McNair's supporting explanation, which was one of the factors that he was required to consider under 20 C.F.R. § 404.1520c, (c)(2) and 20 C.F.R. § 416.920c(b)(2), (c)(1)-(2).

[10] at 15-16.

Plaintiff is incorrect in asserting that the ALJ did not discuss specific treatment records that were inconsistent with Dr. McNair's opinion. Dr. McNair wrote his conclusions regarding Plaintiff's limitations in a June 6, 2018, letter to whom it may concern, and the letter does not cite objective findings to support the opined limitations. [8] at 405. The ALJ devoted a paragraph of her decision to analyzing Dr. McNair's actual treatment records, finding they revealed Plaintiff

> has diabetes type I and takes medications for his condition. The record shows the claimant has fallen and broken bones due to low blood sugar, but the bones have healed. He also had a toe amputated due to a diabetic

ulcer that would not heal after he stepped on a piece of glass. Exam notes documented elevated blood glucose levels and AIC readings within the diabetic range. Notes also generally show the claimant's mental status was within normal limits. He reported improved mood[.] Physical exams show he had [sic] The claimant reported some muscle and joint pain, some headaches and tingling, and numbness. His symptoms appear stable with medication and recent exam notes indicate the claimant denied any blackouts, paresthesia, numbness, or tingling.

[8] at 18-19.

The ALJ explained that Dr. McNair's letter opinion was not supported by Dr. McNair's own treatment records because the treatment records reflected that Plaintiff's fractures had healed and his blood glucose levels were stable with medication. *Id.* at 19, 21. The ALJ compared Dr. McNair's opinion with the opinions of Drs. Williams, James, and Hebert. *Id.* at 21. The ALJ found Dr. McNair's letter opinion that Plaintiff "is unable to stand for over 20 minutes [or] do any lifting over 10 pounds" inconsistent with Dr. Williams's conclusion that "claimant walked normally with no assistive device and had normal strength in all extremities, though he had a reduced range of motion in his right shoulder." *Id.* at 21, 406, 437-39. The ALJ found Dr. McNair's opinion that Plaintiff "is unable to stand for over 20 minutes [or] do any lifting over 10 pounds" also inconsistent with the opinions of agency reviewers, Drs. James and Hebert, who found Plaintiff capable of performing medium work. *Id.* at 21, 129, 166, 406.

In sum, the ALJ addressed each medical opinion and prior administrative finding. For each, she articulated her conclusions with respect to both the key factors of supportability and consistency. The ALJ's decision should be affirmed because it is supported by substantial evidence and comports with relevant legal standards.

## III.  RECOMMENDATION

The ALJ's January 27, 2020, decision should be affirmed, and Plaintiff's appeal dismissed with prejudice.

## IV.  NOTICE OF RIGHT TO OBJECT

Within fourteen days after being served with a copy, any party may serve and file with the Clerk of Court written objections to this Report and Recommendation. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection. L.U.Civ.R. 72(a)(3).

A district judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. A district judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

10

**SIGNED,** this the 28th day of December, 2021.

*s/ Robert H. Walker*

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE